Yes, your honor. Good morning. Christopher Sender appearing on behalf of the petitioner Jorge Garcia-Ortiz. Your honors, what we're asking the court to do, we're asking that this matter be remanded back to the BIA so that the issue of cancellation removal eligibility can be reviewed by the BIA. This court has de novo review over that issue. The BIA held that the petitioner was a trafficker and concluded that petitioner lacked good moral character without conducting any analysis of whether there was sufficient admissible evidence of the trafficking. The immigration judge in the record made certain rulings. The immigration judge ruled that the police reports which he relied on almost exclusively to find that the reason to eliminated to A to C. The immigration judge went on and denied cancellation of removal based on the lack of good moral character because of the reason to believe ground that the petitioner was an illicit trafficker and a controlled substance. When the judge issued his written decision, he didn't specifically state which section of law he was relying on. He decided the general statute under 1229B1. Therefore, we don't know if he denied the case for lack of good moral character under the catchall provision under 1101F or whether he specifically found a statutory bar under 1101F3. It could have been either one. Doesn't the fact that there was a weighing of various factors in addition to the drug trafficking suggest that it was under the catchall? Well, that is obviously what the government has argued in this case, but the problem, and I suppose that's the whole rub, is when it goes up to the BIA, the BIA doesn't conduct any analysis whatsoever on whether there was sufficient evidence. It just kind of makes that conclusion in its decision and finding that he was an illicit trafficker and controlled substances. So, by kind of dodging the issue on the inadmissibility, but then finding it to deny relief, that deprived the petitioner of any meaningful review at the BIA level. And that's the whole reason, I think, the strongest reason why this court, given its de novo review, should remand it back to the BIA and ultimately to the immigration judge for a new decision. I mean, I agree with you that the board could have been a lot clearer in addressing the drug trafficking issue, but why isn't it clear enough from their statement that we are not persuaded by the respondent's appellate challenge to the immigration judge's denial of cancellation of removal because he did not possess the requisite good moral character, and then going on a few lines later to say these equities do not outweigh the respondent's as June 2013 with a citation of the IJ's ruling on page 14. Why isn't that made clear that the board did in fact reject your appellate challenges to the IJ's determination about drug trafficking? I think the reason is because if you look at the judge's decision on 14, he cites back to his previous finding and makes the conclusion that he's not eligible and just cites the general cancellation statute. So he's setting back to his ruling on the inadmissibility ground, which relied again on the police reports which were objected to and challenged, and this never gets any review. Really, it's a conclusory review by the immigration judge. He finds and says it's sufficient and then makes a conclusion, doesn't cite the specific section that he's relying upon, and then we challenge it up at the BIA level, and the BIA level goes, well, we don't need to look at the inadmissibility because he's admitted a different section of inadmissibility, but then uses those those facts and that conclusion to deny cancellation removal based on, well, arguably on the catch-all, and that's what the government argues, but even if it doesn't matter really under which section they're denying it, it matters what they're really was challenged in front of the immigration judge and then by the BIA. The challenge that you made is that they should have credited his assertion that he did not know that there were drugs in the vehicle over the police report. Is that the nub of the dispute? Well, yeah, I mean, to some degree, yes. I mean, he was never convicted of trafficking. He pled out to, I think, attempted possession. There's no trafficking element there, so you have an issue where the criminal court doesn't use any trafficking element. There's no proof. There's nothing proven there, so I understood from your brief that the objection was that they didn't address his defense that he didn't know there were drugs. Now you're saying it's simple possession of, frankly, a large quantity of drugs versus a trafficking issue. I didn't see that that was the issue in your brief. Which is it? Well, I think we're making both, Your Honor, and you said it's a large quantity. I think it's 28 grams, which is less than an ounce, so I think we've is just a simple possession, so that doesn't get the government kind of over the finish line to find that it's a trafficking offense, and yet we did argue that he... I'm sorry. But as to the first one, I mean, doesn't his plea that he, to the possession count, just negate any assertion that he didn't really know? I mean, we can't collaterally go behind that conviction. He's to that element, and it's established. I don't understand why we'd have to send it back to re-examine something that is built into the plea. Well, I understand. I think our point, my point... Wait, counsel. My understanding is he didn't plead guilty to trafficking. Correct. And there's no finding by the BIA that he was engaged in trafficking. Correct. Yet, yet the BIA relies on that when it weighs the equities. Correct. So you want to send it back. You want us to send it back to see if the BIA a chance to make the proper funding, if it can, based on this record. Correct. And again, the BIA looked at the IJ decision, which relied on his finding on the inadmissibility finding that he made originally, which they declined to review. But it's kind of a house of cards. If they won't review that issue where he made his factual and legal conclusions based upon that, then they can't really use it later to deny relief. That's exactly what the petitioner's argument is. That's the nub or the core of our argument, that that's not very fair, and it's a due process violation for them to say, well, we don't need to review it for this reason, but we're going to credit it fully in denying relief. And that deprives the petitioner of a meaningful review of his arguments. The BIA doesn't make really any analysis whatsoever. And I think part of this gets into what the IJ ruled on too. And just getting back to that, if you look at what the immigration judge ruled, he also grants the Department of Homeland Security's motion of predetermined. If you look at the motion of predetermined, which was orally made, that was based on a stop time rule issue where there would have to have been a conviction used and a finding of inadmissibility to stop the clock from running. So I think that adds another layer of confusion into the matter of what the BIA and the IJ meant when they were denying relief in this matter. I think when the government looked at this, they, I think, saw that this was an issue and they looked at the catch-all provision to try to find a good argument why this matter should be denied. But neither the IJ nor the BIA cited to the catch-all provision under 1101F in denying relief. In finding reason to believe, the analysis that courts will usually look at in the absence of a conviction or an admission is things like, as the court's already brought up, a large amount of drugs, if there are several reliable or corroborative reports, if there's knowing and conscious participation and a long record of arrests. None of that is present in this matter. The petitioner is constantly denied that he was aware of drugs or was involved in drug trafficking. I would argue it's a small amount of drugs, one ounce, 28.1 grams. It's actually less than an ounce. Was it a sufficient amount to charge him with trafficking? Well, I don't know about that, but I can tell you that in the immigration decisions that have come down when they've used reason to believe, there's been very large amounts of drugs like 900 pounds of cocaine or 147 pounds of marijuana. Very, very large amounts that the BIA and the circuits have found have been, or led to the conclusion that there was trafficking here. This arguably pales in comparison as far as the amount of drug. So, the admission of those police reports, which were objected to, it's in the record on, administrative record on page 133, makes this decision by the BIA fundamentally unfair. I would argue that this matter, that the BIA may not decline to review whether the petitioner met his burden to establish that he was not a trafficker and then find him ineligible based on that same ground that he was a trafficker. And I believe I've exceeded my time. Okay, you have, but I have a question. What did your client actually plead guilty to? And what was the factual basis? I'm sorry, was there a question I didn't hear? Oh yes, can you not hear me? Is there something wrong with my microphone? Counselor, are you able to hear Judge Wardlaw? Yes, I can hear you now, I'm sorry. Okay, my question was, what did your client actually plead guilty to and what was the factual basis? I'm not sure we have the factual basis in the record, Your Honor. You have the plea? Well, honestly, I don't know. Why don't you look? Why don't you look for it and see if it's in the record? Because I would think that'd be highly relevant. And in particular, if we were to grant the relief of the manning to the BIA, I think the BIA might want to look at that. And we will hear from government counsel while you're doing that. Mr. Yosef? Good morning, Your Honor. Yonel Yosef for the Attorney General. Just to jump in, I would say that the agency here made an adverse good moral character determination under the catch-all provision in finding that the petitioner did not establish eligibility for cancellation of removal. How do you know that? Well, I guess it was under the catch-all provision. Yes, the agency didn't specifically cite that. The opposing counsel, Your Honor, are correct in that. However, the agency, the board in its analysis indicated that even assuming the respondent's claims are true that he has strong family ties, it is an excellent record as a father, provider, and employee. These equities do not outweigh the respondent's involvement in illicit trafficking as recently as June 2013. The problem is they didn't actually make that finding in the inadmissibility analysis. And the BIA did not actually consider that. They're just noting that the IJ found that. And counsel seems to have some good arguments that he was not engaged in trafficking. That's correct, Your Honor. I think I would, well, just to complete my answer from before, specifically under, I guess, what this court in Hussain Barrett, which was citing Torres Guzman, said that relevant factors to a catch-all determination are education, family background, employment history, financial status, and lack of criminal record. Many of these factors are the factors that were cited by the board. So that tells us that that's why they didn't specifically cite the catch-all. That indicates to us that they were conducting that specific analysis. And to your point, Your Honor, I think also it's constructive to look at Torres Guzman, where in terms of what is considered in terms of for making a catch-all determination for a good moral character, it requires that the fact finder weigh and balance the favorable, unfavorable factors reasonably bearing on character that are presented in evidence. So here, what we have presented in evidence is the petitioner's involvement in the nature and circumstances of his arrest, being that he was initially arrested for selling methamphetamine to an undercover police officer. And I understand his statement that he was simply facilitating a transaction. He wasn't aware of the drug situation, the drug that was his claim. But at the end of the day, the agency is permitted to look at the nature of his arrest, the circumstances regarding his criminal record, his criminal history. And while the board did specifically use the term of illicit trafficking, I think it may have been their shorthand in terms of addressing what exactly transpired in June 2013 arrest. And I think that's where it's clear that the agency is considering the circumstances of his arrest, which they're entitled to do in these determinations. Well, is it due process to ignore Garcia's challenge to the IJ's illicit trafficking finding, but then still use that finding against him in the moral character determination? Well, I would say it's not a due process issue in the sense that they're not using the illicit trafficking as a per se bar to his eligibility for release. They're simply citing those circumstances. The council, the BIA's analysis is, here's all these great things about this guy, but then we have the drug trafficking, so he's out. And yet, Garcia was challenging the drug trafficking and the BIA failed to address it. And I think all that Garcia is asking for us to do is just send it back to the BIA and have them address it and get to the truth of it. Well, I understand that, Your Honor. I think the question here is, do we have enough here for the agency? Did the agency weigh the factors in the record that are relevant to a good moral character finding? And as I stated earlier, these are education, family ties, financial circumstances, as well as criminal record. And that is what the agency did here. The criminal record is not a conviction for drug trafficking. Trafficking, as I understand it, it's something more akin to possession. Well, I mean, it does say that the language of the board uses is the respondent's involvement in the illicit trafficking of methamphetamine. If they're referencing their involvement, the involvement being that he facilitated unknowingly, as he claims, a sale of methamphetamine to an undercover police officer. And I think that's what the agency here is citing. Because, for example, the immigration judge specifically said that he wasn't using a per se bar, but simply noted the petitioner's involvement in the methamphetamine, a controlled substance. You make this statement at page 22, footnote 6. You say that the board did not reach the charge of admissibility that would require a finding that he was an illicit trafficker. You say that's not before us, yet you say it's still okay to go on and consider it in the balancing of the equities. Well, it's a distinct form of burden of proof here. It would fall on the government to establish that he's inadmissible under that charge of admissibility. The board declined to reach that because there was no other ground of removal or ground of admissibility. And here, the burden is on the petitioner to demonstrate that he is a good moral character. And the agency looked at the record of including his positive equities and looked at the criminal record and determined he lacked that good moral character. I understand the court's concern in terms of the board using the illicit trafficking of methamphetamine, that term of art. And I would understand that concern. But it simply is, I believe, referencing the fact that the circumstances of his arrest, which he disputes in the fact that he didn't know it was drugs, but he doesn't dispute the fact that what happened actually happened, that he accepted $600 from an undercover police officer in exchange for a package, a package that ended up being 28 grams of methamphetamine. And the agency was entitled to look at that. The board was, it's a relevant characteristic and a good moral character finding. And I see exercise of discretion in weighing those factors. And because it properly exercised that discretion, the court ultimately lacks jurisdiction over that discretionary determination. And the petitioner cannot demonstrate his burden of proof for cancellation of removal. Are there any further questions on that issue, Your Honors? No, not for me. Okay. Well, in regards to, if the court's interested in addressing whether it was holding and TAT as well as the second PFR, I can address that, or we can simply submit on the briefs and as well as our summary disposition motion. I think you can submit on the briefs on that. All right. Then thank you for your time, Your Honors. Thank you very much, Mr. Joseph. Mr. Stender, I'll give you a minute. Yeah, I'm sorry. The factual basis, it was as I stated, attempted possession of dangerous drugs. It's on page 300 to 305, the conviction record. And there is a plea colloquy in the record at page 318. And it says, the court, Mr. Ortiz, you're a charge in count one of the information as amended attempted possession of dangerous drugs is a violation of statute. The factual basis is given that on June 14, 2013, Maricopa County, my client knowingly attempted to possess a usable quantity of a dangerous drug. That's the entire factual basis. And then it goes on to say, Mr. Ortiz, is everything your attorney explained to me there true and accurate? The answer is yes. And so we have the defendant's own admission in court as of the plea that he knew that those were drugs. And so I don't understand why we would have to send this back to the BIA to determine whether or not he knew there were drugs. I think it's not necessarily just that. It's whether there was trafficking in the trafficking element. Okay. Because your brief says that he denies there were drugs that he showed that he didn't know and that it should be sent back for that. So you're abandoning that argument at this point? Yeah, it's the trafficking element primarily. That's correct. That's all I had, your honors. All right. Thank you so much, counsel. Garcia-Ortiz v. Barr will be submitted and we'll take up Bizarre v. Barr.
judges: Wardlaw, Eaton, Collins